1  CHRISTOPHER CHIOU
   Acting United States Attorney
2  Nevada Bar Number 14853
   JIM W. FANG
3  Assistant United States Attorney
   501 Las Vegas Blvd. South, Ste. 1100
4  Las Vegas, Nevada 89101
   Phone: (702) 388-6336
5  Email: jim.fang@usdoj.gov
   *Attorneys for the United States of America*



6

7                    **UNITED STATES DISTRICT COURT**
                      **FOR THE DISTRICT OF NEVADA**

8  UNITED STATES OF AMERICA,              No. 2:21-cr-301-APG-NJK

9              Plaintiff,

10                 v.                       **Plea Agreement for Defendant**
                                           **Marian Poenaru Pursuant to**
11  MARIAN POENARU,                        **Fed. R. Crim. P. 11(c)(1)(A) and (B)**

12             Defendant.

13

14          This plea agreement between Marian Poenaru ("defendant") and the United States

15  Attorney's Office for the District of Nevada (the "USAO") sets forth the parties' agreement

16  regarding the criminal charges referenced herein and the applicable sentences, fines, restitution,

17  and forfeiture in the above-captioned case. This agreement binds only defendant and the USAO

18  and does not bind the district court, the U.S. Probation Office, or any other federal, state, local,

19  or foreign prosecuting, enforcement, administrative, or regulatory authorities. This agreement

20  does not prohibit the USAO or any agency or third party from seeking any other civil or

21  administrative remedies, including administrative forfeiture or civil forfeiture *in rem* actions,

22  directly or indirectly against defendant or defendant's property

23          This agreement becomes effective upon signature by defendant, defendant's counsel, and

24  an Assistant United States Attorney.

## I. DEFENDANT'S OBLIGATIONS

1. Defendant agrees to:

  a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Conspiracy to Possess Counterfeit and Unauthorized Access Devices in violation of 18 U.S.C. § 1029(b)(2) (Count One); and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) (Count Two);

  b. Stipulate to the facts agreed to in this agreement;

  c. Abide by all agreements regarding sentencing contained in this agreement;

  d. Not seek to withdraw defendant's guilty pleas once they are entered;

  e. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter;

  f. Not commit any federal, state, or local crime;

  g. Be truthful at all times with the U.S. Probation and Pretrial Services Offices and the Court;

  h. Before and after sentencing, upon request by the Court, the USAO, or the Probation Office, provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning defendant's assets and defendant's ability to pay. As part of the required disclosure, defendant agrees to provide any and all financial information and authorizations requested by the Probation Office for preparation of the Presentence Report. Defendant further agrees that, upon filing of this agreement, the USAO is authorized to obtain defendant's credit report. Defendant will also complete a financial form provided by the USAO, to include all supporting documentation, and return it to the USAO

within three (3) weeks from entry of the plea. Defendant agrees that the district court may enter any order necessary to effectuate or facilitate disclosure of defendant's financial information;

      i.     To facilitate payment of any fine, forfeiture, restitution, or assessment, surrender assets defendant obtained directly or indirectly as a result of defendant's crimes. Defendant agrees to voluntarily release funds and property under defendant's control or in which defendant has any property interest, before and after sentencing, to pay any fine or restitution identified in this agreement, agreed to by the parties, or ordered by the Court;

      j.     Defendant agrees that restitution shall be ordered due and payable in full immediately after the judgment is entered, and that the full amount of any restitution ordered is subject to immediate enforcement and collection by the USAO or defendant's victims, or both. Defendant agrees that any schedule of payments entered by the district court is a schedule of the minimum payment due and does not prohibit or limit the methods by which the USAO may immediately enforce and collect the judgment in full. Defendant acknowledges that restitution may not be discharged, in whole or in part, in any present or future bankruptcy proceeding; and

      k.     The forfeiture of the property and the imposition of the forfeiture of the property as set forth in this Plea Agreement and the Forfeiture Allegation of the Criminal Information.

## II. THE USAO'S OBLIGATIONS

2.     The USAO agrees to:

      a.     Stipulate to facts agreed to in this agreement;

      b.     Abide by all agreements regarding sentencing contained in this agreement;

      c.     At sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level

1  reduction in the applicable sentencing guidelines offense level, pursuant to USSG § 3E1.1, and

2  move for an additional one-level reduction if available under that section; and

3          d.      Not bring any additional charges against defendant arising out of the

4  investigation in the District of Nevada which culminated in this agreement and based on

5  conduct known to the USAO. However, the USAO reserves the right to prosecute defendant for

6  (a) any crime of violence as defined by 18 U.S.C. § 16; and (b) any criminal tax violations

7  (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371). Defendant

8  agrees that the district court at sentencing may consider any uncharged conduct in determining

9  the applicable sentencing guidelines range, the propriety and extent of any departure from that

10  range, and the sentence to be imposed after consideration of the sentencing guidelines and all

11  other relevant factors under 18 U.S.C. § 3553(a).

12  **III. ELEMENTS OF THE OFFENSES**

13         3.    <u>Count One</u>: The elements of Conspiracy to Possess Counterfeit and Unauthorized

14  Access Devices in violation of 18 U.S.C. § 1029(b)(2) are as follows:

15      <u>First</u>:      Beginning on or about the dates listed in the indictment, and continuing to

16                       on or about the date listed in the indictment, there was an agreement

17                       between two or more persons to effect illegal transactions with one or

18                       more access devices issued to another person in violation of 18 U.S.C.

19                       1029(a)(3);

20      <u>Second</u>:    The defendant became a member of the conspiracy knowing of at least one

21                       of its objects and intending to help accomplish it; and

22      <u>Third</u>:      One of the members of the conspiracy performed at least one overt act for

23                       the purpose of carrying out the conspiracy.

24  *See* Ninth Circuit Model Criminal Jury Instruction 8.20 (2010 ed. updated Dec. 2019).

1    4.    <u>Count Two</u>: The elements of Aggravated Identity Theft in violation of 18 U.S.C.

2  § 1028A(a)(1) are as follows:

3    <u>First</u>:    The defendant knowingly possessed and used without legal authority a

4                 means of identification of another person;

5    <u>Second</u>:   The defendant knew that the means of identification belonged to a real

6                 person; and

7    <u>Third</u>:    The defendant did so during and in relation to the offense charged in Count

8                 One under 18 U.S.C. § 1029(b)(2).

9  *See* Ninth Circuit Model Criminal Jury Instruction 8.83 (2010 ed. updated Dec. 2019).

## IV. CONSEQUENCES OF CONVICTION

11    5.    <u>Maximum and Minimum Statutory Penalties</u>:

12           a.    Defendant understands that the statutory maximum sentence the district

13 court can impose for a violation of 18 U.S.C. § 1029(b)(2), as charged in Count One, is: 5 years

14 imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or

15 gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment

16 of $100.

17           b.    Defendant understands that the statutory mandatory sentence that the

18 Court must impose for a violation of 18 U.S.C. § 1028A, as charged in Count Two of the

19 information, is a two-year term of imprisonment, which must run consecutive to any other

20 sentence of imprisonment imposed under any other provision of law, and a mandatory special

21 assessment of $100.

22           c.    Defendant understands, therefore, that the total maximum sentence for all

23 offenses to which defendant is pleading guilty is: 7 years imprisonment; a 3-year period of

24

1 supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the

2 offenses, whichever is greatest; and a mandatory special assessment of $200.

3       6.    <u>Restitution</u>: Defendant understands that defendant will be required to pay full

4 restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees

5 that, in return for the USAO's compliance with its obligations under this agreement, the Court

6 may order restitution to persons other than the victims of the offenses to which defendant is

7 pleading guilty and in amounts greater than those alleged in the counts to which defendant is

8 pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim

9 of any of the following for any losses suffered by that victim as a result of any relevant conduct,

10 as defined in USSG § 1B1.3, in connection with the offenses to which defendant is pleading

11 guilty. The parties currently believe that the applicable amount of restitution is at least

12 $103,735.82, but recognize and agree that this amount could change based on facts that come to

13 the attention of the parties prior to sentencing.

14       7.    <u>Criminal Forfeiture</u>: Defendant understands that the district court will impose the

15 forfeiture of the property.

16       8.    <u>Parole Abolished</u>: Defendant acknowledges that defendant's prison sentence

17 cannot be shortened by early release on parole because parole has been abolished.

18       9.    <u>Supervised Release</u>: Defendant understands that supervised release is a period of

19 time following imprisonment during which defendant will be subject to various restrictions and

20 requirements. Defendant understands that if defendant violates one or more of the conditions of

21 any supervised release imposed, defendant may be returned to prison for all or part of the term of

22 supervised release authorized by statute for the offenses that resulted in the term of supervised

23 release, which could result in defendant serving a total term of imprisonment greater than the

24 statutory maximum stated above.

10.     <u>Factors under 18 U.S.C. § 3553</u>: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the district court's discretion in determining defendant's sentence.

11.     <u>Potential Collateral Consequences of Conviction</u>: Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the district court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12.     <u>Potential Removal/Deportation Consequences of Conviction</u>: Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The district court cannot advise defendant fully regarding the immigration consequences of the felony conviction in this case, but defendant's attorney has advised him about the deportation risks of his guilty plea. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

1

## V. FACTUAL BASIS

2          13.    Defendant admits that defendant is, in fact, guilty of the offenses to which

3    defendant is agreeing to plead guilty. Defendant acknowledges that if defendant elected to go to

4    trial instead of pleading guilty, the USAO could prove defendant's guilt beyond a reasonable

5    doubt and establish its right to forfeit the specified property by preponderance of the evidence.

6    Defendant further acknowledges that defendant's admissions and declarations of fact set forth

7    below satisfy every element of the charged offenses. Defendant waives any potential future claim

8    that the facts defendant admitted below are insufficient to satisfy the elements of the charged

9    offenses. Defendant admits and declares under penalty of perjury that the facts set forth below

10   are true and correct:

11                  a.    On April 25, 2021, Las Vegas Metropolitan Police Department

12   ("LVMPD") arrested defendant and another individual for, among other charges, possession of

13   counterfeit and authorized access devices. The arrest was the result of an investigation, since

14   October 2020, of three individuals who were observed to have installed and used skimmer

15   devices around ATMs in the Las Vegas Valley area. Defendant was one of these individuals.

16                  b.    Skimmer devices are designed to be inserted into the card reader slots of

17   ATMs and read the encoded account data from victim payment cards as they are being used at

18   the ATMs. The stolen account data could be used to re-encode other cards, essentially

19   converting these other cards to be recognized as the victims' cards which, along with victims'

20   PIN codes, could be used to withdraw funds from the victims' accounts. Along with the skimmer

21   devices, defendant and coconspirators also installed hidden cameras at these ATMs to record the

22   victims as they typed in their PIN codes while using the ATMs.

23                  c.    During his arrest, defendant was found in possession of multiple prepaid

24   gift cards that have been re-encoded, as described above, using stolen bank account information

1   from victims. Defendant also informed the officers that he lived at a Las Vegas, Nevada address

2   that was in the same apartment complex at which he was arrested. Subsequent search of said

3   apartment uncovered more than 500 cards that were re-encoded using fraudulently obtained

4   bank account information. Defendant admits that all the re-encoded cards belonged to and were

5   possessed by him and his coconspirators. Defendant further admits that these cards were then

6   used by him and his coconspirators to make cash withdraws and purchases for their own

7   personal benefit without the consent and authorization of the legitimate bank account holders.

8         d.      At least 300 of the counterfeit cards recovered were re-encoded with

9   account information of debit cards issued by the Nevada Department of Employment, Training

10   and Rehabilitation ("DETR") through Bank of America, which were used to disburse

11   unemployment insurance benefits during the COVID-19 pandemic.

12         e.      The search also uncovered, among other things, (1) a blue HP Stream

13   laptop bearing serial number 5CD111NX66; (2) a silver HP laptop bearing serial number

14   5CG1083FBK; (3) a black HP laptop bearing serial number 3T894703WX; (4) twelve ATM

15   skimmers; (5) two Point of Sale (POS) Ingenico overlay card skimmers; (6) pinhole cameras;

16   (7) electronic parts used to manufacture skimmers; and (8) a magnetic card reader writer that

17   could be used to re-encode payment cards. Defendant admits that he and his coconspirators used

18   the aforementioned laptops, in conjunction with the magnetic card reader writer, to re-encode

19   the recovered counterfeit cards with bank account information fraudulently acquired from

20   victims through their use of the skimmers.

21         f.      Defendant further admits that all the stolen bank account information used

22   to produce the re-encoded cards belonged to real people, including credit and debit card numbers

23   that constitute means of identification as defined by 18 U.S.C. § 1028(d)(7).

24

1         g.     Defendant admits that he and his coconspirators intended to fraudulently

2   obtain more than $250,000 from the more than 500 re-encoded cards that were found in their

3   possession.

4         h.     Defendant admits that on April 19, 2021, he personally used a counterfeit

5   card re-encoded with the stolen bank account information, including the debit card number, of

6   an account belonging to victim C.C., to make an ATM withdraw. C.C.'s debit card was a debit

7   card issued by DETR to disburse unemployment insurance benefits. Defendant further admits

8   that C.C. is a real person, and that he did not have consent and authorization from C.C. to make

9   the ATM withdraw.

10        i.     Lastly, defendant admits that his fraudulent activities in Las Vegas were

11  committed after he and his coconspirators relocated their fraudulent scheme from another state

12  to the State of Nevada to evade law enforcement officials.

13        j.     Because defendant and his coconspirators unlawfully and without authority

14  possessed and used means of identification belonging to more than 500 real people, his offense

15  involved more than 10 victims.

16                                   **VI. SENTENCING FACTORS**

17        14.    <u>Discretionary Nature of Sentencing Guidelines</u>: Defendant understands that in

18  determining defendant's sentence, the district court is required to calculate the applicable

19  sentencing guidelines range and to consider that range, possible departures under the sentencing

20  guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant

21  understands that the sentencing guidelines are advisory only, that defendant cannot have any

22  expectation of receiving a sentence within the calculated sentencing guidelines range, and that

23  after considering the sentencing guidelines and the other § 3553(a) factors, the district court will

24

1   be free to exercise its discretion to impose any sentence it finds appropriate between the

2   mandatory minimum and up to the maximum set by statute for the crimes of conviction.

3        15.   Offense Level Calculations: With respect to Count One, the parties jointly agree

4   and stipulate that, in calculating defendant's advisory guidelines sentencing range, the Court

5   should use the following base offense level and adjustments; acknowledge that these stipulations

6   do not bind the district court; and agree that they will not seek to apply or advocate for the use of

7   any other base offense level(s) or any other specific offense characteristics, enhancements, or

8   reductions in calculating the advisory guidelines range:

9        Base Offense Level [USSG § 2B1.1(a)(2)]:                    6

10       Loss > $250,000 [USSG § 2B1.1(b)(1)(G)]:                   +12

11       > 10 Victims [USSG § 2B1.1(b)(2)(A)(i)]:                    +2

12       Relocation/Sophisticated Means [USSG § 2B1.1(b)(10)(A) & (C)]:  +2

13       Prod. of Unauthorized Access Dev. [USSG § 2B1.1(b)(11)(B)(i)]:   +2

14                Adjusted Offense Level:                         24

15       With respect to Count Two, the parties stipulate and agree that, pursuant to USSG §

16   2B1.6, the guidelines sentence is the term of imprisonment required by statute, which in this case

17   is a two-year prison term to be served consecutive to defendant's sentence on Count One.

18       16.   Reduction for Acceptance of Responsibility: Under USSG § 3E1.1(a), the USAO

19   will recommend that defendant receive a two-level downward adjustment for acceptance of

20   responsibility unless defendant (a) fails to truthfully admit facts establishing a factual basis for the

21   guilty pleas when defendant enters the pleas; (b) fails to truthfully admit facts establishing the

22   amount of restitution owed when defendant enters the guilty pleas; (c) fails to truthfully admit

23   facts establishing the forfeiture allegations when defendant enters the guilty pleas; (d) provides

24   false or misleading information to the USAO, the Court, Pretrial Services, or the Probation

1   Office; (e) denies involvement in the offenses or provides conflicting statements regarding

2   defendant's involvement or falsely denies or frivolously contests conduct relevant to the offenses;

3   (f) attempts to withdraw defendant's guilty pleas; (g) commits or attempts to commit any crime;

4   (h) fails to appear in court; or (i) violates the conditions of pretrial release.

5          Under USSG § 3E1.1(b), if the district court determines that defendant's total offense

6   level before operation of § 3E1.1(a) is 16 or higher, and if the USAO recommends a two-level

7   downward adjustment pursuant to the preceding paragraph, the USAO will move for an

8   additional one-level downward adjustment for acceptance of responsibility before sentencing

9   because defendant communicated defendant's decision to plead guilty in a timely manner that

10  enabled the USAO to avoid preparing for trial and to efficiently allocate its resources.

11         17.    Criminal History Category. Defendant acknowledges that the district court may

12  base defendant's sentence in part on defendant's criminal record or criminal history. The district

13  court will determine defendant's criminal history category under the sentencing guidelines.

14         18.    Additional Sentencing Information: The stipulated sentencing guidelines

15  calculations are based on information now known to the parties. Defendant understands that

16  both defendant and the USAO are free to (a) supplement the facts in this agreement by supplying

17  relevant information to the U.S. Probation and Pretrial Services Offices and the district court

18  regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or

19  mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the

20  district court's sentencing guidelines calculations and determination of sentence. While this

21  paragraph permits both the USAO and defendant to submit full and complete factual

22  information to the U.S. Probation and Pretrial Services Offices and the district court, even if that

23  factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

24  paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed

12

1   to in this agreement. Good faith efforts to provide truthful information or to correct factual

2   misstatements shall not be grounds for defendant to withdraw defendant's guilty pleas.

3         Defendant acknowledges that the U.S. Probation Office may calculate the sentencing

4   guidelines differently and may rely on additional information it obtains through its investigation.

5   Defendant also acknowledges that the district court may rely on this and other additional

6   information as it calculates the sentencing guidelines range and makes other sentencing

7   determinations, and the district court's reliance on such information shall not be grounds for

8   defendant to withdraw defendant's guilty pleas.

9                    **VII. POSITIONS REGARDING SENTENCING**

10        19.   With respect to Count One, the USAO will recommend that the district court (a)

11  vary downward two levels under 18 U.S.C. § 3553(a); and (b) impose a sentence at the low-end

12  of the guidelines range corresponding to the post-variance offense level and the criminal history

13  category determined by the district court. Defendant may argue for a further downward

14  variance pursuant to 18 U.S.C. § 3553. Defendant acknowledges that the district court does not

15  have to follow the recommendation of either party.

16        20.   With respect to Count Two, the parties will jointly recommend the mandatory

17  sentence of 24 months consecutive to the district court's sentence on Count One. Defendant

18  acknowledges that the district court must impose this sentence.

19        21.   Notwithstanding its agreement to recommend a sentence as described above, the

20  USAO reserves its right to defend any lawfully imposed sentence on appeal or in any post-

21  conviction litigation.

22        22.   If defendant commits any act that results in the Court finding that defendant is

23  not entitled to a downward adjustment for acceptance of responsibility, the USAO is entitled to

24  argue for any sentence it deems appropriate under 18 U.S.C. § 3553(a).  In any such event,

13

1   Defendant remains bound by the provisions of this agreement and shall not have the right to

2   withdraw defendant's guilty pleas.

3   ### VIII. WAIVER OF CONSTITUTIONAL RIGHTS

4        23.    Defendant understands that by pleading guilty, defendant gives up the following

5   rights:

6        a.    The right to persist in a plea of not guilty;

7        b.    The right to a speedy and public trial by jury;

8        c.    The right to be represented by counsel—and if necessary have the court

9   appoint counsel—at trial. Defendant understands, however, that, defendant retains the right to

10  be represented by counsel—and if necessary have the court appoint counsel—at every other stage

11  of the proceeding;

12       d.    The right to be presumed innocent and to have the burden of proof placed

13  on the USAO to prove defendant guilty beyond a reasonable doubt;

14       e.    The right to confront and cross-examine witnesses against defendant;

15       f.    The right to testify and to present evidence in opposition to the charges,

16  including the right to compel the attendance of witnesses to testify;

17       g.    The right not to be compelled to testify, and, if defendant chose not to

18  testify or present evidence, to have that choice not be used against defendant; and

19       h.    The right to pursue any affirmative defenses, Fourth Amendment or Fifth

20  Amendment claims, and any other pretrial motions that have been filed or could be filed.

21  ### IX. WAIVER OF APPELLATE RIGHTS

22       24.    <u>Waiver of Appellate Rights</u>. Defendant knowingly and expressly waives: (a) the

23  right to appeal any sentence imposed within or below the applicable Sentencing Guideline range

24  as determined by the district court; (b) the right to appeal the manner in which the district court

1    determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal

2    any other aspect of the conviction, including but not limited to the constitutionality of the

3    statutes of conviction; any other aspect of the sentence; and any order of restitution or forfeiture.

4        25.    Defendant reserves only the right to appeal any portion of the sentence that is an

5    upward departure or variance from the applicable Sentencing Guideline range as determined by

6    the district court.

7        26.    Waiver of Post-Conviction Rights. Defendant also knowingly and expressly

8    waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's

9    conviction, sentence, and the procedure by which the district court adjudicated guilt and

10   imposed sentence, except non-waivable claims of ineffective assistance of counsel.

11       27.    Preservation of Evidence: Defendant acknowledges that the USAO and the

12   agencies investigating this case are not obligated or required to preserve any evidence obtained in

13   the investigation of this case.

## X. FORFEITURE

15       28.    Defendant knowingly and voluntarily:

16           a.    Agrees to the district court imposing the civil judicial forfeiture and the

17   criminal forfeiture of:

18                    i.    at least 500 counterfeit cards that were re-encoded using stolen bank

19                          account information;

20                    ii.   a counterfeit debit card encoded with the bank account information,

21                          including the debit card number, of an account belonging to C.C.;

22                    iii.  a blue HP Stream laptop bearing serial number 5CD111NX66;

23                    iv.   a silver HP laptop bearing serial number 5CG1083FBK;

24                    v.    a black HP laptop bearing serial number 3T894703WX;

1                   vi.  twelve ATM skimmers;

2                  vii.  two Point of Sale (POS) Ingenico overlay card skimmers;

3                 viii. pinhole cameras;

4                 ix.  electronic parts used to manufacture skimmers; and

5                 x.   a magnetic reader writer that could be used to re-encode payment

6                     cards

7  (all of which constitutes property);

8         b.      Agrees to the civil administrative forfeiture, the civil judicial forfeiture, and

9  the criminal forfeiture of the property;

10        c.      Forfeits the property to the United States;

11        d.      Relinquishes all possessory rights, ownership rights, and all rights, titles,

12  and interests in the property;

13        e.      Waives defendant's right to any civil administrative forfeiture proceedings,

14  any civil judicial forfeiture proceedings, and any criminal forfeiture proceedings of the property

15  (proceedings);

16        f.      Waives service of process of any and all documents filed in this action and

17  any proceedings concerning the forfeiture of the property arising from the facts and

18  circumstances of this case;

19        g.      Waives any further notice to defendant, defendant's agents, and

20  defendant's attorney regarding the forfeiture and disposition of the property;

21        h.      Agrees not to file any claim, answer, petition, and other documents in any

22  proceedings concerning the property; agrees not to contest, and agrees not to assist any other

23  person and entity to contest, the forfeiture; and agrees to withdraw immediately any claim,

24  answer, petition, and other documents in any proceedings;

16

i.      Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7, 11, 32.2, and 43(a), including, but not limited to, forfeiture notice in the charging document, the court advising defendant of the forfeiture at the change of plea, the court having a forfeiture hearing, the court making factual findings regarding the forfeiture, the court announcing the forfeiture at the change of plea and sentencing, the court attaching the forfeiture order to the Judgment in a Criminal Case, and any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property in any proceedings, including, but not limited to, double jeopardy and due process under the Fifth Amendment to the United States Constitution;

j.      Waives all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property in any proceedings, including, but not limited to, a jury trial under the Sixth Amendment to the United States Constitution;

k.      Waives any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property in any proceedings, including, but not limited to, excessive fines and cruel and unusual punishments under the Eighth Amendment to the United States Constitution;

l.      Waives any and all constitutional, statutory, legal, equitable rights, defenses, and claims to the property in any proceedings under *Honeycutt*;

m.      Agrees to the entry of an Order of Forfeiture of the property to the United States;

n.      Waives the right to appeal any Order of Forfeiture;

o.      Agrees the property is forfeited to the United States and can be taken into custody immediately by the USAO;

p.   Agrees and understands the civil administrative forfeiture, the civil judicial forfeiture, and the criminal forfeiture of the property shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, and any other penalty the Court may impose upon defendant in addition to the forfeiture;

q.   Agrees and understands that on the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include subsequently located property or substitute property pursuant to Fed. R. Crim. P. 32.2(b)(2)(A) and (C) and 32.2(e);

r.   Acknowledges the amount of the forfeiture may differ from, and may be significantly greater than or less than, the amount of restitution;

s.   Agrees to take all steps as requested by the USAO to pass clear title of any forfeitable assets to the United States and to testify truthfully in any judicial forfeiture proceedings. Defendant understands and agrees that the property represents facilitating property of illegal conduct and is forfeitable; and

t.   Admits the property is any personal property used or intended to be used to commit the violations of 18 U.S.C. § 1028A(a)(1) with 1028A(c)(4) and 18 U.S.C. § 1029(a)(3) and 1029(b)(2) and is subject to forfeiture pursuant to 18 U.S.C. § 1029(c)(1)(C) and 1029(c)(2).

## XI. RESULT OF WITHDRAWAL OF GUILTY PLEAS OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTIONS

29.   _Consequence of withdrawal of guilty pleas_: Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement and (b) should the USAO choose to pursue any charge that was either dismissed

or not filed as a result of this agreement, then (i) any applicable statute of limitations will be

tolled between the date of defendant's signing of this agreement and the filing commencing any

such action; and (ii) defendant waives and gives up all defenses based on the statute of

limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such

action, except to the extent that such defenses existed as of the date of defendant's signing this

agreement.

30. <u>Consequence of vacatur, reversal, or set-aside</u>: Defendant agrees that if any count

of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the district court to

resentence defendant on the remaining count of conviction, with both the USAO and defendant

being released from any stipulations regarding sentencing contained in this agreement; (b) ask

the district court to void the entire plea agreement and vacate defendant's guilty pleas on the

remaining count of conviction, with both the USAO and defendant being released from all their

obligations under this agreement; or (c) leave defendant's remaining conviction, sentence, and

plea agreement intact. Defendant agrees that the choice among these three options rests in the

exclusive discretion of the USAO, and that, should the USAO choose to pursue any charge that

was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of

limitations will be tolled between the date of defendant's signing of this agreement and the filing

commencing any such action; and (ii) defendant waives and gives up all defenses based on the

statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to

any such action, except to the extent that such defenses existed as of the date of defendant's

signing this agreement.

## XII. BREACH OF AGREEMENT

31. Defendant agrees that if, at any time after this agreement becomes effective,

defendant knowingly violates or fails to perform any of defendant's obligations under this

agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the district court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will remain bound by the provisions of this agreement and will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

32.     Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.     Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.     Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.     Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## XIII. COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

33.    Defendant understands that the Court and the U.S. Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

34.    Defendant understands that both defendant and the USAO are free to argue on appeal and collateral review that the district court's sentencing guidelines calculations and the sentence it chooses to impose are not error.

35.    Defendant understands that even if the district court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to by the parties, or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one—not the prosecutor, defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## XIV. ADDITIONAL ACKNOWLEDGMENTS

36.    Defendant acknowledges that:

a.    Defendant read this agreement and defendant understands its terms and conditions.

b.    Defendant had adequate time to discuss this case, the evidence, and this agreement with defendant's attorney.

c.    Defendant carefully and thoroughly discussed all terms of this agreement with defendant's attorney.

d.     Defendant understands the terms of this agreement and voluntarily agrees to those terms.

e.     Defendant has discussed with defendant's attorney the following: the evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. 3553(a); the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

f.     The representations contained in this agreement are true and correct, including the factual basis for defendant's offenses set forth in this agreement.

g.     Defendant was not under the influence of any alcohol, drug, or medicine that would impair defendant's ability to understand the agreement when defendant considered signing this agreement and when defendant signed it.

37.     Defendant understands that defendant alone decides whether to plead guilty or go to trial, and acknowledges that defendant has decided to enter defendant's guilty pleas knowing of the charges brought against defendant, defendant's possible defenses, and the benefits and possible detriments of proceeding to trial.

38.     Defendant understands that no promises, understandings, or agreements other than those set forth in this agreement have been made or implied by defendant, defendant's attorney, or the USAO, and no additional promises, agreements, or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the district court.

39.     Defendant acknowledges that defendant decided to plead guilty voluntarily and that no one threatened, coerced, or forced defendant to enter into this agreement.

22

1    40.    Defendant is satisfied with the representation of defendant's attorney, and

2   defendant is pleading guilty because defendant is guilty of the charges and chooses to take

3   advantage of the promises set forth in this agreement and for no other reason.

4               **XV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING**

5    41.    The parties agree that this agreement will be considered part of the record of

6   defendant's guilty plea hearing as if the entire agreement had been read into the record of the

7   proceeding.

8   AGREED AND ACCEPTED

9   UNITED STATES ATTORNEY'S OFFICE
    FOR THE DISTRICT OF NEVADA

10

11  CHRISTOPHER CHIOU
    Acting United States Attorney

12

13  _____          April 6, 2022
    JIM W. FANG                                _____
                                               Date
14  Assistant United States Attorney

15

16  _____          3-22-2022
    MARIAN POENARU                             _____
    Defendant                                  Date
17

18  _____          3-30-2022
    MICHAEL V. CASTILLO, ESQ.                  _____
19  Counsel for Defendant                      Date

20

21

22

23

24

23

**Exhibit A**
**Form of Two-Count Information**
**Charging Defendant Holmes**

THE UNITED STATES ATTORNEY CHARGES THAT:

<u>COUNT ONE</u>
Conspiracy to Possess Counterfeit and Unauthorized Access Devices
(18 U.S.C. § 1029(b)(2))

1.     Between on or about April 20, 2020 and on or about April 26, 2021, in the State and Federal District of Nevada and elsewhere,

MARIAN POENARU,

defendant herein, did knowingly and willfully conspire and agree with other persons known and unknown to commit the crime of Possession of Counterfeit and Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(3).

2.     In furtherance of the conspiracy, on or about April 25 and 26, 2021, POENARU possessed at least 15 counterfeit cards that were re-encoded using stolen bank account information from 15 different people, said bank account information were obtained using ATM skimmer devices POENARU and his coconspirators had installed at various ATMs in Las Vegas, Nevada.

3.     All in violation of 18 U.S.C. § 1029(b)(2).

<u>COUNT TWO</u>
Aggravated Identity Theft
(18 U.S.C. § 1028A(a)(1))

4.     On or about April 19, 2021, in the State and Federal District of Nevada,

MARIAN POENARU,

defendant herein, did knowingly possess and use, without lawful authority, a means of identification of another person, that is, a counterfeit debit card encoded with the bank account information, including the debit card number, of an account belonging to C.C., during and in

24

relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, the violation of 18

U.S.C. § 1029(b)(2) described in Count One, knowing that the means of identification belonged

to another actual person, in violation of 18 U.S.C. § 1028A(a)(1).

FORFEITURE ALLEGATION

Conspiracy to Possess Counterfeit and Unauthorized Access Devices and
Aggravated Identity Theft

1.  The allegations contained in Counts One and Two of this Criminal Information are

hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture

pursuant to 18 U.S.C. § 1029(c)(1)(C) and 1029(c)(2).

2.  Upon conviction of any of the felony offenses charged in Counts One and Two of this

Criminal Information,

MARIAN POENARU,

defendant herein, shall forfeit to the United States of America, any personal property used or

intended to be used to commit the violations of 18 U.S.C. § 1028A(a)(1) with 1028A(c)(4) and

18 U.S.C. § 1029(a)(3) and 1029(b)(2):

1.  at least 500 counterfeit cards that were re-encoded using stolen bank account
    information;

2.  a counterfeit debit card encoded with the bank account information, including the
    debit card number, of an account belonging to C.C.;

3.  a blue HP Stream laptop bearing serial number 5CD111NX66;

4.  a silver HP laptop bearing serial number 5CG1083FBK;

5.  a black HP laptop bearing serial number 3T894703WX;

6.  twelve ATM skimmers;

7.  two Point of Sale (POS) Ingenico overlay card skimmers;

8.  pinhole cameras;

25

9.   electronic parts used to manufacture skimmers; and

10. a magnetic reader writer that could be used to re-encode payment cards.

All pursuant to 18 U.S.C. § 1028A(a)(1) with 1028A(c)(4) and 18 U.S.C. § 1029(a)(3), 1029(b)(2), 1029(c)(1)(C), and 1029(c)(2).