JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
JIM W. FANG
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Email: jim.fang@usdoj.gov
*Attorneys for the United States of America*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MARIAN POENARU,<br><br>    Defendant. | Case No. 2:21-cr-301-APG-NJK<br><br>**Government's Sentencing Memorandum** |

Defendant Marian Poenaru, a Romanian citizen, entered the United States illegally on August 27, 2016, at the age of 15. Presentence Investigation Report ("PSR"), ¶ 74, 76. He has remained in the country ever since. Not long after his entry into the country, defendant began to engage in ATM skimming fraud in 2017, the same illegal activities to which he pled guilty in the instant matter. *See* Ex. A. Since then, defendant has been engaged in ATM skimming activities throughout the country, including in Maryland, Virginia, Indiana, Michigan, and now Nevada. *See* Ex. A, B & C; PSR, ¶ 69. Given the scope of the activities and defendant's propensity to engage in them, there is little doubt that the full extent of defendant's crimes over the past six years remains unknown and undiscovered.

In Nevada, defendant and his co-conspirators installed skimming devices in ATMs to capture users' account credentials and PINs. ECF No. 34 at 8. The conspirators then re-encoded gift cards with captured data so that they could withdraw funds from the victim accounts. *Id.* at 9. When law enforcement searched defendant's apartment as part of this investigation, defendant possessed more than 500 re-encoded cards containing bank account information. *Id.* More than 300 of those cards contained bank account information of debit cards issued by Nevada's Department of Employment, Training, and Rehabilitation ("DETR") to disburse unemployment benefits to those in need during the pandemic. *Id.*

At the time of his arrest, defendant possessed no less than four forged foreign identification documents bearing his picture but in other names. This is consistent with defendant's prior use of aliases. *See* PSR, ¶ 69. Thus, defendant was sophisticated enough to obtain multiple fake IDs and use them to evade law enforcement. In an attempt to minimize the consequences of his criminal activity, defendant falsely claimed he was a juvenile. Moreover, in the apartment, officers did not simply recover copious counterfeit debit cards—they recovered a sophisticated lab used both to create ATM skimming equipment as well as to manufacture counterfeit cards, including unfinished parts for ATM skimmers, evincing the group's highly technical skillset in creating complicated electronics.

Despite the highly sophisticated nature of defendant's crimes, as well as the scope and extent of his illegal activities over the years, the government is recommending a two-level downward variance based on defendant's young age and obvious lack of proper guidance during his formative years. As discussed further below, a sentence of 30 months for Count I, followed by a statutorily mandated consecutive sentence of 24 months for Count II, for a total of 54 months imprisonment is adequate, but not greater than necessary, punishment for defendant's crimes.

## I. SENTENCING STANDARD

Title 18, Section 3553(a) of the United States Code lays out the factors the Court should consider when imposing a sentence. They include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Although courts normally focus on factors (1) and (2) above, and rely on Probation to determine and calculate the sentencing options under (3) and (4), all of the factors above must be considered by the Court. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Dibe*, 776 F.3d 665, 670 (9th Cir. 2015).

## II.     DISCUSSION

**A.     A 54-Month Sentence Is Appropriate, But Not Greater Than Necessary, to Reflect the Seriousness of the Offense, Provides Just Punishment for the Offense, Promotes Respect for the Law, and Serve as Adequate Deterrence for Defendant and Others.**

As the government espoused above, despite the sophistication and seriousness of the crimes, taken into account defendant's young age and lack of guidance growing up, a 54-month sentence is the appropriate sentence under the § 3553(a) factors. The government recognizes that defendant's crimes are non-violent. However, given that the Sentencing Guidelines explicitly treat violent crimes and white-collar crimes differently, the fact that white-collar crimes often do not involve violence has already been taken into account by the Sentencing Commission. It is presumed, if not outright obvious, that the non-violent nature of white-collar crimes is woven into the very fabric of a guidelines sentence for white-collar crimes. To grant further variance due to the non-violent nature of white-collar crimes would essentially be double counting an undoubtedly important characteristic of the offense, creating a windfall for white-collar criminals.

Defendant, in his sentencing memorandum, places a great deal of focus on his youth as justification for further downward variance. But defendant is not simply a young man who made one or two bad decisions and ended up on the wrong side of the law. By the time defendant was arrested for the instant offenses, he had been engaged in ATM skimming activities for more than five years, practically the entire length of time he has been in this country. Given the length and pervasiveness of defendant's conduct, it is neigh impossible to argue that this was a mistake; it was likely an intentional and premeditated decision to live a life of crimes. As the lab discovered in his apartment suggests, at this point, defendant is a sophisticated criminal in conducting ATM skimming fraud. While the government is

sympathetic in recommending a two-level downward variance due to his circumstances, any further variance would fail to account for the seriousness of defendant's offenses and the real-world harm caused by his actions. Indeed, the one-day sentence defendant seeks for his predicate substantive offense would trivialize his conduct and incentivize defendant and others to commit this type of crime.[1] "District courts must determine in each case what constitutes a sentence that is sufficient, but not greater than necessary . . . to achieve the overarching sentencing purposes of retribution, deterrence, incapacitation, and rehabilitation." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018) (internal quotation marks and citations omitted).[2]

For all these reasons, the government respectfully asks this Court to impose a sentence of 30 months for Count One, to be served consecutively to the 24-month sentence required by statute for Count Two, for a total of 54 months' imprisonment. This sentence is sufficient, but not greater than necessary, to achieve the goals of just sentencing as codified in § 3553(a).

**B.    A Sentence of 54 Months Promotes Sentencing Parity.**

According to the PSR, for Count I, the median length of imprisonment imposed on defendants under the same guideline as defendant here, with the same criminal history

---

[1] Based on a 2016 study, white-collar criminals are *more likely* to recidivate than violent criminals. *See* White Collar Crime: Recidivism, Deterrence, and Social Impact, Forensic Research & Criminology International Journal (2016) (available at http://medcraveonline.com/FRCIJ/FRCIJ-02-00039.pdf). According to this study, recidivism rates among white-collar criminals were higher across the board when compared to violent offenders. The study partially attributed that trend to the lenient sentences imposed for white-collar crimes.

[2] Defendant additionally argues that because he is likely to be deported after serving his sentence, recidivism is less of a concern. However, defendant initially entered into the United States illegally, and nothing in the record suggests that he would not do so again.

5

category, is 30 months. PSR at 23. This is exactly the same sentence recommended by the government. Accordingly, to avoid sentencing disparity, the Court should impose a total sentence of 54 months as recommended by the government.

**C.     The Court Is Statutorily Prohibited from Taking into Consideration That Defendant Is Subject to a Mandatory Consecutive Sentence for Count II When Determining the Appropriate Sentence for Count I.**

In his sentencing memorandum, defendant argues "[t]he variance sought here – from 36 months to one day – is not insubstantial. However, the Defendant submits it is warranted given the fact that the Court is bound to impose a lengthy two-year sentence on Count II which in and of itself serves the purposes of sentencing and adequately reflects Mr. Poenaru's personal circumstances[.]" ECF No. 43 at 5. Crucially, the Court is prohibited by statute from taking into account the mandatory consecutive sentence under Count II when determining the appropriate sentence for Count I.

> [I]n determining any term of imprisonment to be imposed for the felony during which the means of identification was transferred, possessed, or used, a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section[.]

18 U.S.C. § 1028A(b)(3); *cf. Dean v. United States*, 137 S. Ct. 1170, 1177-78 (2017) (confirming that courts can consider the length of the mandatory consecutive sentence under § 924(c) by contrasting it with the text of § 1028A). In other words, the Court cannot consider the impact of the 24-month mandatory consecutive sentence for Aggravated Identity Theft under § 1028A when fashioning its sentence for the predicate felony. Essentially, defendant is arguing for an illegal sentence.

In contrast, without taking into account the sentence for Count II as the statute commands, defendant is basically arguing that a one-day sentence is appropriate for stealing the debit card information of 500-plus victims, the majority of which were DETR debit

cards used to disburse unemployment insurance benefits during the COVID-19 pandemic, when those victims most needed the benefits. That such a sentence would be inappropriate under any one of the § 3553(a) factors, let alone in the aggregate, should be obvious on its face. Instead, the Court should impose a total sentence of 54 months as recommended by the government for all the reasons stated above.

### III.   CONCLUSION

For the foregoing reasons, the government respectfully requests the Court to impose a custodial sentence of 54 months as the appropriate and just punishment against defendant.

DATED this 13th day of July, 2022.

JASON M. FRIERSON
United States Attorney

*s/Jim W. Fang*
Jim W. Fang
Assistant United States Attorney